IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

LAMAR BASS,

        Plaintiff,

v.

KANSAS CITY SOUTHERN RAILWAY
COMPANY,

        Defendant.

Case No. 3:20-cv-01365-NJR

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

This matter is before the Court on a Motion to Compel filed by Plaintiff Lamar Bass. (Doc. 31). Defendant Kansas City Southern Railway Company ("KCSR") filed a response in opposition to the motion. (Doc. 38).

### MOTION TO COMPEL

This is a racial discrimination and retaliation case alleging violations of Title VII. The case was filed on December 23, 2020. (Doc. 1). On July 7, 2021, the Court adopted the parties' proposed scheduling and discovery order. [1] (Doc. 21). Bass served his First Set of Interrogatories and First Requests for Production ("RFPs") on KCSR on July 14, 2021. (Doc. 31, p. 1). KCSR did not respond until October 22, 2021. (*Id*.). Coincidentally, on December 6, 2021, the parties filed a motion to amend the scheduling and discovery order explaining that "additional time was needed to complete initial written discovery, and due to scheduling

---

[1] At that time, discovery was to be completed by January 6, 2022. (Doc. 21, p. 2).

issues the party depositions have yet to take place." (Doc. 23). On December 8, 2021, the Court granted the parties' motion to amend the scheduling and discovery order—moving the discovery deadline to August 24, 2022. (Doc. 29).

On January 20, 2022, Bass sent a letter attempting to resolve a discovery dispute with KCSR's counsel by requesting KCSR to supplement its responses. (Doc. 31-1). KCSR did not supplement its responses after Bass's *first attempt*, so Bass's counsel emailed KCSR's counsel on February 8, 2022, requesting KCSR to supplement the discovery responses. (Doc. 31-2). KCSR did not supplement its responses after Bass's *second attempt*, so Bass's counsel sent a draft motion to compel to KCSR's counsel on February 22, 2022. (Doc. 31, p. 2). KCSR did not supplement its response after Bass's *third attempt*, so on March 1, 2022, the parties discussed the discovery dispute and Bass's counsel sent a letter confirming their discussions on the same day. (Doc. 31-3). About two months after the conversation or *over nine months since KCSR was served with Bass's first discovery requests*—on April 29, 2022—KCSR finally supplemented its answers and responses to Bass's First Set of Interrogatories and First RFPs. (Docs. 31-4; 31-5).

On April 13, 2022, Bass served his Second Set of Interrogatories and Second RFPs. (Doc. 38-1). KCSR's responses were due on May 13, 2022—but KCSR failed to respond. KCSR asks that the Court to "grant it 14-days in which to answer [Bass's] second set of written discovery, without waiver of objections." (Doc. 38, p. 8).

Two months before the close of discovery, Bass filed his first motion to compel. (Doc. 31). Bass asserts that "KCSR supplemented some of its answers, but continues to answer questions 'subject to objection' even when there was an agreement as to how it could be answered." (*Id*. at p. 2). Bass requests an order "compelling [KCSR] to withdraw its

objections to [Bass's] First Interrogatories and [RFPs] as outlined above, and provide its answers, without objection, to [Bass's] Second Interrogatories and [RFPs], within the next 10 days of this Court's Order, and for such further relief as the Court may deem just and proper." (*Id*. at pp. 5-6). In opposition to his motion, KCSR argues "[it] should not be compelled to withdraw [its] [objections], and thereby potentially waive them." (Doc. 38, p. 1). KCSR also argues generally, "[t]hose objections were related to requests unlimited by time and/or definition (the terms used could commonly be understood to mean anything) and/or would be unduly burdensome to gather the requested information, and/or simply unrelated to this case." (*Id*. at pp. 1-2). According to KCSR, "[t]he Court should note the time span for which many of [Bass's] discovery requests are being made." (*Id*. at p. 2). KCSR also notes:

> [Bass's] Complaint alleges discrimination regarding positions applied for between 2016 and 2019. (See Doc. #4, ¶25). Plaintiff repeatedly requests information going back as far as 1997, which is irrelevant to the hiring decisions made approximately 19 – 22 years later.

(*Id*.). Due to the detailed nature of the requests, objections, and Motion to Compel, the Court will review each of Bass's requests and KCSR's responses in turn.

## LEGAL STANDARD

This Court has broad discretion in discovery matters, including ruling on motions to compel. *See James v. Hyatt Regency Chi*., 707 F.3d 775, 784 (7th Cir. 2013). Generally, the parties are permitted to obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action. FED. R. CIV. P. 26(b)(1). Considering relevancy, information need not be admissible at trial if discovery seems reasonably calculated to lead to discovery of admissible evidence. *Id*. Regarding discovery, "[p]arties are entitled to a reasonable opportunity to investigate the facts—and no more." *Vakharia v.*

*Swedish Covenant Hosp.*, 1994 WL 75055, at \*2 (N.D. Ill. Mar. 9, 1994).

Rule 33 permits parties to serve upon each other interrogatories relating to any matter that may be inquired into under Rule 26(b). FED. R. CIV. P. 33(a)(2). Parties seeking discovery may move for an order compelling an answer if a party fails to answer an interrogatory. FED. R. CIV. P. 37(a)(3)(B)(iii). An evasive or incomplete disclosure, answer, or response is considered a failure to disclose, answer, or respond. FED. R. CIV. P. 37(a)(4). Additionally, an interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact, but the court may order that the interrogatory need not be answered until designated discovery is complete or until a pretrial conference or some other time. FED. R. CIV. P. 33(a)(2). Moreover, the grounds for objecting to an interrogatory must be stated with specificity. FED. R. CIV. P. 33(b)(4).

DISCUSSION

## I.    Certification Under FED. R. CIV. P. 37

"Rule 37 requires that a motion to compel 'must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make the discovery in an effort to secure the information or material without court action.'" *Kalis v. Colgate-Palmolive Co.*, 231 F.3d 1049, 1059 (7th Cir. 2000) (quoting FED. R. CIV. P. 37(a)(2)(B)).[2] In *Kalis*, the plaintiff's motion to compel "did not include a Rule 37(a) certification, and, consequently, the district court did not abuse its discretion in denying that motion." *Id.*

Bass's counsel failed to include a Rule 37(a) certification. (Doc. 31).[3] However, "[a]t

---

[2] Rule 37(a)(1) now commands that "[t]he motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action."

[3] Setting aside the Federal Rules of Civil Procedure, the Court's Case Management Procedures explain

its discretion the court may waive strict compliance with the conference requirements."

*Pulsecard, Inc. v. Discover Card Servs., Inc.*, 168 F.R.D. 295, 302 (D. Kan. 1996) (citations

omitted). "It will generally do so when the time for filing another motion to compel has

passed and the respondent opposes the motion on its merits and offers no possibility of

compromise." *Id.*; *see also Benavidez v. Sandia Nat'l Lab'ys*, 319 F.R.D. 696, 724 (D. N.M. 2017)

(acknowledging that "[i]n appropriate circumstances, however, the Court may still choose to

hear the motion despite the failure to confer as the Court has described that word").

## II.      KCSR's Boilerplate Objections

"First of all, it has to be said that the objections 'vague, overly broad, and unduly

burdensome' are the type of unacceptable 'boilerplate' objections that are tantamount to

making no objections at all." *Alight Sols. v. Thomson*, 2021 WL 5038775, at *3 (N.D. Ill. Oct. 29,

2021) (citing FED. R. CIV. P. 33(b)(4) ("The grounds for objecting to an Interrogatory must be

stated with specificity. Any ground not stated in a timely objection is waived unless the court,

for good cause, excuses the failure.")); *see also Curtis v. Costco Wholesale Corp.*, 807 F.3d 215,

219 (7th Cir. 2015) (finding that district court did not abuse its discretion in deeming facts

admitted where plaintiff "provided only boilerplate objections, such as 'relevance' and

'vague and ambiguous.'"); *Extended Care Clinical v. Scottsdale Ins.*, 2021 WL 2894163, at *2

(N.D. Ill. 2021) (collecting cases).

Many of KCSR's objections to Interrogatories 5, 6, 7, and 14 and KCSR's objections to

RFPs 2, 4, and 10 are boilerplate, and thus are overruled. Specifically, KCSR's answers to

---

that "[o]nly if a party can certify that it made, or attempted to make, a good faith effort to resolve the
discovery dispute may that party contact the Court regarding the dispute." *See*
https://www.ilsd.uscourts.gov/documents/Rosenstengel.pdf (last visited Aug. 4, 2022).

Interrogatories 5, 6, and 7 and response to RFP 2 contain the following objections:

> [Bass's] request is further overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of relevant or admissible evidence to the extent it pertains to alleged acts or omissions for which [Bass] has failed to exhaust administrative remedies as required by law.

(Doc. 31-4, pp. 4-5; Doc. 31-5, pp. 1-2). Indeed, it was not until its response to the motion to compel that KCSR explained why it would be overly burdensome to answer in more detail this discovery. The problem is these grounds needed to be stated with specificity when KCSR was responding to discovery.

## III.    KCSR's Remaining Objections to Discovery

### A.  Interrogatory 5

Bass seeks information on whether he received any complaints, reprimands, suspensions, or other discipline while employed with KCSR. (Doc. 31-4, p. 3). Besides KCSR's prior boilerplate objections, KCSR objects to Interrogatory 5 "on the grounds that the terms 'complaints' and 'reprimands' are vague and undefined." (*Id*. at p. 4). It was not until KCSR's response to the motion to compel that it explained that "[c]omplaints may run the gambit from formal complaints (written or oral) made to KCSR management for action, to meritless whining between KCSR employees (e.g., union craft employees) about how [Bass] does his job, that is not escalated to the management level." (Doc. 38, p. 2).

The Court does not find Interrogatory 5 vague. Nonetheless, KCSR shall limit its answer to any complaints, reprimands, suspensions, or other discipline from January 2005 through December 2019 because Bass allegedly took a job with KCSR as a terminal trainmaster in Shreveport, Louisiana, in 2007, and he was allegedly denied his last promotion in December 2019. (Doc. 1, pp. 3-4). Knowing Bass's job performance leading up to attaining

the position of terminal trainmaster and Bass's job performance when he was denied for promotions are relevant based on Bass's allegations. Further, KCSR's response will be limited to all complaints, reprimands, suspensions, or other discipline while Bass was employed with KCSR that escalated to the management level. KCSR is ordered to answer Interrogatory 5 based on these limitations.

### B. Interrogatory 6

Interrogatory 6 asks to "[s]tate whether or not written or recorded statements have been obtained from any persons mentioned in these answers to Interrogator[ies] with regard to the facts or circumstances surrounding the occurrence mentioned in these pleadings, answer and/or affirmative defenses." (Doc. 31-4, p. 4). Besides KCSR's boilerplate objections, KCSR objects to Interrogatory 6 "on the grounds that the phrase 'circumstances surrounding the occurrence' is vague and undefined [and] [Bass] has filed a Complaint with forty-seven (47) numbered paragraphs and multiple associated subparagraphs, all containing a variety of alleged 'circumstances' and/or 'occurrences.'" (*Id.*).

The Court does not find Interrogatory 6 vague. KCSR shall fully answer. While KCSR "has informed [Bass] that it produced all presently known statements related [Bass's] failure to promote allegations[,]" KCSR concedes that "[o]nly [Bass's] letters were produced because [Bass] did not provide KCSR any names of those who allegedly discriminated against him in the denial of his applications for promotions." (Doc. 38, p. 3). The Court fails to understand how Bass's failure to provide names of those who discriminated against him allows KCSR to not answer Interrogatory 6. Accordingly, the Court overrules KCSR's objections.

### C. Interrogatory 7

Interrogatory 7 requests KCSR to "[s]tate the names, telephone numbers, employers

and addresses of every person known by [KCSR], [KCSR]'s representatives or [KCSR]'s attorney to have witnessed or have knowledge of any alleged misconduct or alleged negative actions of [Bass] pertaining to [Bass's] employment with [KCSR]." (Doc. 31-4, p. 5). Besides KCSR's boilerplate objections, KCSR objects to Interrogatory 7 "on the grounds that the terms 'alleged misconduct' and 'alleged negative actions' are vague and undefined, it is overly broad in time and scope, unduly burdensome, and to the extent that it seeks information protected by the attorney-client and work product privileges." (Doc. 31-4, p. 5).

The Court does not find Interrogatory 7 vague. KCSR shall answer, but not waive its attorney-client and work product privileges. The Court also will limit KCSR's response in scope from those persons witnessing or having knowledge of any alleged misconduct or alleged negative actions that took place between January 2005 and December 2019. Again, Bass allegedly took a job with KCSR as a terminal trainmaster in Shreveport, Louisiana, in 2007, and he was last denied a promotion in December 2019. (Doc. 1, pp. 3-4). Knowing the identity of witnesses or persons with knowledge of the alleged misconduct or alleged negative actions that took place between that time frame is relevant based on Bass's allegations.

D. *Interrogatory 9*

Interrogatory 9 requests KCSR to "[s]tate whether or not any insurance company has an interest in the outcome of this litigation against defendant." (Doc. 31-4, p. 6). KCSR objects to Interrogatory 9 "on the grounds that the term 'interest' is vague and undefined." (*Id.*). Bass then agreed to limit Interrogatory 9 to "any interest in the outcome in the payment of any judgment or settlement." (Doc. 31, p. 3). KCSR responds it "does not have insurance that will cover the cost of the potential judgment in this case." (Doc. 38, p. 4).

The Court will sustain KCSR's objection as Bass agreed to limit Interrogatory 9 based on the objection, and KCSR answered according to Bass's limitation.

E.  *Interrogatory 12*

Interrogatory 12 asks KCSR to "[s]tate and explain each and every reason that [Bass] was not selected for promotion at each job he applied and each job that he expressed interest in but that KCSR filled without hosting an application process." (Doc. 31-4, p. 8). KCSR objects to Interrogatory 12 "on the grounds that the phrases 'hosting an application process' and 'expressed interest in' are vague and undefined, and it calls for a narrative more appropriate for a deposition." (*Id*.).

Like the others, the Court does not find Interrogatory 12 vague. Employers hire former employees, co-workers, family members, or acquaintances for a position *or* will promote a current employee without requiring submission of an application. Often the positions are created or become available without being made available to the public or other current employees. This allows employers to skip the application process and hire former employees, co-workers, family members, or acquaintances for a position directly or promote current employees automatically.

Accordingly, KCSR is ordered to state and explain each and every reason that Bass was not selected for promotion at each job he applied to *and* each job he expressed interest in, but that KCSR filled without hosting an application process. The Court will limit the phrase "expressing interest in" to mean each position or promotion Bass communicated with a hiring or promoting official/manager either in writing or verbally. The Court will limit the phrase "without hosting an application process" to mean each position or promotion KCSR filled without an application process (i.e., hiring or promoting someone without requiring an

application or when hiring or promoting someone without making the position's availability known to the public). Finally, the Court will limit the temporal scope of KCSR's answer to each job Bass applied or each job he expressed interest in between January 1, 2016, to December 31, 2019.

F. *Interrogatory 14*

Interrogatory 14 requests KCSR to "[i]dentify each black employee who was promoted within KCSR in the five years previous to the date [Bass] filed his complaint to present." (Doc. 31-4, pp. 10-11). KCSR objects to Interrogatory 14 "on the grounds that it is overly broad in time and scope, unduly burdensome, and seeks information regarding matters that lack the requisite 'substantial similarity' with respect to the facts of this case." (*Id.* at p. 11). As noted above, the objections "overly broad in time and scope, unduly burdensome" are boilerplate objections and are overruled. KCSR's other objection as to "substantial similarity" is neither elaborated on nor does KCSR provide law that supports the notion that it does not need to answer based on a lack of requisite "substantial similarity." Accordingly, the objection is overruled. KCSR shall fully answer.

G. *RFP 2*

RFP 2 requests KCSR to "provide each and every document relating to any internal investigations of any complaint made by [Bass] while employed by [KCSR]." (Doc. 31-5, p. 1). Besides KCSR's boilerplate objections, KCSR objects to RFP 2 "on the grounds that the terms 'internal investigations' and 'complaint' are vague and undefined, it is overly broad in time and scope, and to the extent that the request seeks information protected by the attorney-client privilege and work product privilege." (*Id.*).

RFP 2 is not vague, but the Court will limit KCSR's response to provide each and every

document relating to any internal investigation related to the complaints Bass made to Human Resources on May 17, 2019, and December 27, 2019, because these are the only complaints Bass's counsel identified. (Doc. 1, p. 5). Accordingly, KCSR is ordered to respond, but not waive the attorney-client and work product privileges.

### H.  RFP 4

This request seeks "documents relating to any personnel files, including those that might not be included in the official personnel file." (Doc. 31, p. 4). According to Bass, "[p]laintiff and defense counsel spoke at length about this, and made it clear that [plaintiff] [was] seeking any document that any supervisor might keep in their personal office or email relating to [ ] Bass." (*Id.*). KCSR responds "[it] does not maintain any personnel file on [Bass] other than that which was previously produced and is not withholding any materials." (Doc. 38, p. 6). Still, KCSR objects to RFP 4 "on the grounds that the terms 'official personnel file' and 'private personnel file' are vague and undefined, and 'all other records concerning Plaintiff's employment' is overly broad in scope, unduly burdensome, extends records protected by attorney-client and/or work-product privilege, and is not reasonably calculated to lead to relevant and admissible evidence." (Doc. 31-5, p. 2).

KCSR's boilerplate objections are overruled. The Court also does not find RFP 4 vague. KCSR is ordered to respond, but shall not waive the attorney-client and work product privileges.

### I.  RFP 5

RFP 5 seeks documents or things related to "[a]ny disciplinary file maintained on [Bass], if maintained separate from [Bass's] personnel file, including but not limited to any documents relating to any allegation of misconduct or negative job performance of actions

by [Bass]." (Doc. 31-5, p. 3). Bass asserts that "[KCSR] makes a boilerplate objection." (Doc. 31, p. 4). KCSR objects to RFP 5 "on the grounds that the terms 'misconduct' and 'negative job performance or actions' are vague and undefined." (Doc. 31-5, p. 3).

The Court does not find RFP 5 vague, and thus KCSR's objection is overruled. KCSR shall fully respond.

### J.   RFP 6

Bass seeks "[a]ny and all documents relating or pertaining to any meeting by employees of [KCSR] in which they discussed a job application made by [Bass]." (Doc. 31-5, p. 3). KCSR objects "on the grounds that it is overly broad in time and scope and [objects] to the extent that it seeks information protected by the attorney-client privilege and work product privilege."(*Id.*). KCSR's response to the motion to compel then asserts that "[it] has produced all known non-privileged documents relating to meetings by KCSR employees where [Bass's] job applications were discussed." (Doc. 38, p. 5).

Although "overly broad in time and scope" is close to a boilerplate objection, the objection is sustained. KCSR shall respond to RFP 6, but its response is limited to any and all documents relating or pertaining to any meeting by employees of KCSR in which they discussed a job application made by Bass from March 1, 2016, to December 31, 2019. (*See* Doc. 1, p. 4). Again, KCSR shall not waive its attorney-client and work product privileges.

### K.   RFP 10

This request asks KCSR to produce any and all statements from Bass. (Doc. 31-1, p. 7). KCSR objected to the request as "overly broad in time and scope." (Doc. 31-5, p. 4). Bass then agreed to limit it to "statements from [Bass] regarding racial discrimination and/or failure to promote." (Doc. 31, p. 5). KCSR's response to the motion to compel then asserts that "[t]o the

extent that Request No. 10 relates to statements from [Bass] regarding [his] claims of racial discrimination and failure to promote, KCSR has produced all presently known statements from [him]." (Doc. 38, p. 6).

The Court will sustain KCSR's objection as Bass agreed to limit RFP 10 based on the objection, and KCSR has answered according to Bass's limitation.

*L.  RFP 13*

This request asks KCSR to "[p]roduce any and all reports of racial discrimination, harassment and/or racial slurs made in the five years previous to [Bass's] complaint to the present, whether [there] are reports documenting oral reports, made via email, or formal reports to human resources or supervisor[s]." (Doc 31-5, p. 5). KCSR's remaining objection is based on "lack[ing] the requisite 'substantial similarity' with respect to the facts of this case." (*Id*.). Again, the problem is "substantial similarity" is neither elaborated upon nor does KCSR provide law that allows an objection based on the notion of a lack of requisite "substantial similarity." Accordingly, the objection is overruled. KCSR shall fully answer.

**IV.  Second Requests for Interrogatories and RFPs**

*A.  Second Set of Interrogatories Served*

Bass argues that "[t]he responses were due on May 13, 2022; therefore, any objections have been waived." (Doc. 31, p. 5). KCSR responds "[r]egarding [Bass's] second set of discovery requests . . . there was no meet and confer regarding KCSR's responses prior to the filing of [Bass's] Motion to Compel, and [Bass] did not follow-up with KCSR regarding the second set of requests." (Doc. 38, p. 6). According to KCSR, "[t]herefore, [Bass's] Motion to Compel, as it relates to the second set of discovery requests, is premature." (*Id*.).

"The responding party **must** serve its answers and any objections *within 30 days after*

*being served with the interrogatories.*" FED. R. CIV. P. 33(b) (emphasis added). "The grounds for objecting to an interrogatory must be stated with specificity." FED. R. CIV. P. 33(b)(4). "Any ground not stated in a *timely objection is waived unless the court, for good cause, excuses the failure.*" *Id.* (emphasis added). KCSR's answers to Bass's Second Set of Interrogatories were not timely served. Accordingly, KCSR's objections are waived. KCSR is required to fully answer Bass's Second Set of Interrogatories.

### B. *Second Set of RFPs Served*

Similarly, the deadline for serving responses to a party's request for production of documents is also "*within 30 days after being served or – if the request was delivered under Rule 26(d)(2) – within 30 days after the parties' first Rule 26(f) conference.*" FED. R. CIV. P. 34(b) (emphasis added).

"The failure to object to a discovery request in a *timely fashion* may constitute a waiver of the objection, including objections based on privilege." *Applied Sys., Inc. v. N. Ins. Co. of New York*, 1997 WL 639235, at *2 (N.D. Ill. Oct. 7, 1997) (citations omitted) (emphasis added). "Some courts have decided against waiver where there have been (1) minor procedural violations, good faith attempts at complying, and some notice to the opposing party of the privilege objections; (2) where a party accidently fails to list a privileged document in a case involving voluminous documents; and (3) in other cases involving non-flagrant discovery violations where the requested documents are plainly protected by a privilege." *Id.* (citing *First Sav. Bank, F.S.B. v. First Bank Sys., Inc.*, 902 F. Supp. 1356, 1362 (D. Kan. 1995)). "In contrast, evidence of foot-dragging or a cavalier attitude towards following court orders and the discovery rules supports finding waiver." *Ritacca v. Abbott Lab'ys*, 203 F.R.D. 332, 335 (N.D. Ill. 2001) (citations omitted).

In *Applied Sys., Inc.*, the plaintiff served its discovery request on July 2, 1997. *Applied Sys., Inc. v. N. Ins. Co. of New York*, 1997 WL 639235, at *2 (N.D. Ill. Oct. 7, 1997). The defendant not only failed to produce anything in the two months following plaintiff's discovery request, but the defendant also failed to apprise the plaintiff of its intent to object based on privilege or work-product until September 9, 1997—six days before the close of discovery. *Id.* The court noted that "despite the clear requirements of Rules 26(b)(5) and 34(b), [defendant's] counsel did not see the need on August 13 to state—even belatedly—that the basis for her untimely future objections would be privilege." *Id.* On these facts, the court found "[defendant's] delay unjustifiable and its casual approach to this litigation inexcusable." *Id.* "Accordingly, the court found [defendant] waived all its objections to [plaintiff's] discovery requests." *Id.*

Similar to the defendant in *Applied Sys., Inc.*, KCSR's objections to *both* Bass's First and Second Set of Interrogatories and RFPs were untimely. Bass served his First Set of Interrogatories and First RFPs on KCSR on July 14, 2021. (Doc. 31, p. 1). KCSR did not respond until October 22, 2021. (*Id.*). On April 13, 2022, Bass served his Second Set of Interrogatories and Second RFPs. (Doc. 38-1). KCSR's responses were due on May 13, 2022—but KCSR never responded and now asks for "14-days in which to answer [Bass's] second set of written discovery, without waiver of objections." (Doc. 38, p. 8).

Discovery is scheduled to be completed in just a few weeks (by August 24, 2022). (Doc. 29). KCSR does not attempt to justify its delay—it does not suggest that the documents are privileged or provide specific objections. Indeed, from the Court's perspective KCSR has been dragging its feet. Besides the late responses to discovery, Bass's counsel attempted to resolve its prior discovery disputes with KCSR's counsel on at least four occasions—January 20, 2022, February 8, 2022, February 22, 2022, and March 1, 2022. (Docs. 31, p. 1; 31-1; 31-2;

31-3). Approximately nine months since KCSR was served with Bass's first discovery requests — on April 29, 2022 — KCSR finally supplemented its answers and responses to Bass's First Set of Interrogatories and RFPs. (Docs. 31-4; 31-5). Setting aside KCSR's delay in supplementing Bass's first discovery requests, KCSR has now dragged its feet in responding to Bass's Second Set of RFPs for months.

Finally, KCSR argues that Bass's Second Set of Requests for Production contains requests that necessitate discovery of electronically stored information ("ESI"). (Doc. 38, p. 7). KCSR then asserts that "[it] previously requested an ESI protocol from Plaintiff but did not receive one." (*Id*.). KCSR points to docket entry number 47. Not only is there not a docket number 47, but the Court fails to see anything in the record where KCSR requested an ESI protocol. Instead, on June 9, 2021, December 6, 2021, and December 7, 2021, the parties certified that they did not anticipate a need for an ESI protocol. (Doc. 21-1, p. 2; Doc. 24, p. 2; Doc. 26, p. 2). The parties also agreed that they would submit any joint proposed ESI protocol to the Court no later than June 30, 2022. (*Id*.). Still, the Court will allow the parties to submit a Stipulated Order Regarding Discovery of Electronically Stored Information.

The Court is frustrated with the way this case has been litigated. Bass's attempts to confer with KCSR regarding discovery *questionably* satisfies the duty to confer. Bass's counsel sent one letter, two emails, and had one discussion with KCSR's counsel. (Doc. 31). The Court does not know the length of the discussion or the amount KCSR's counsel contributed to resolving the disputes. Besides not knowing the details of this discussion, the one letter and two emails provided would not satisfy the parties' duty confer. *See VNA Plus, Inc. v. Apria Healthcare Grp., Inc.*, 1999 WL 386949, at *2 (D. Kan. June 8, 1999) ("[o]ne letter between counsel which addresses the discovery dispute does not satisfy the duty to confer"); *see also*

Page 16 of 18

*Benavidez*, 319 F.R.D. at 724 (acknowledging that the "Court will also honor lawyers who sit at a computer and have a *simultaneous* exchange of emails") (emphasis added).

Setting aside KCSR's alarming lack of participation in the discovery process, the briefing on the motion to compel was certainly unhelpful. Counsel for KCSR responded late and did not provide support for how cooperative he has been during the discovery process.[4]

After addressing the motion to compel and reviewing the record, the Court is now aware of the parties' cavalier attitude in progressing this case. For instance, in July 2021 the Court set discovery and dispositive motion deadlines. (Doc. 21). The Court did not hear from the parties until they sought extensions to the discovery and dispositive motion deadlines in December 2021. (Doc. 23). After the Court extended the discovery and dispositive motion deadlines in December 2021, the Court did not hear from the parties until Bass's counsel brought the motion to compel in June 2022. (Doc. 31).[5] From December 2021 to June 2022, the Court was under the impression that this case was progressing and would be ready for trial by January 2023—but now the Court is doubtful.

---

[4] Sometimes parties will explain how many documents they have produced in response to a request. Other times parties may explain how long they have spent searching for an answer or for documents to show why something is unduly burdensome. Instead, KCSR contends it "has produced numerous witnesses to testify on the subjects of [Bass's] discovery requests (and others) and is now set to produce at least six additional employees and former employees over the next two months to testify on these topics." (Doc. 38, p. 1). KCSR notes that it "has produced written requested information *after* the issuance of these discovery requests and KCSR could not be further from withholding any information relevant to this case." (*Id*.). The issue with KCSR's response is it ignores the basic premise that sometimes litigants seek written discovery *before* depositions.
[5] There was one filing between December 2021 to June 2022. The parties merely filed the stipulation selecting a mediator. (Doc. 30).

CONCLUSION

For the reasons stated above, the Motion to Compel filed by Lamar Bass is **GRANTED in part** and **DENIED in part**. (Doc. 31). KCSR shall respond based on the Court's instructions stated above within **14 days** of this order. The parties are **FURTHER ORDERED** to submit a Stipulated Order Regarding Discovery of Electronically Stored Information by **Monday, August 15, 2022**.

**IT IS SO ORDERED.**

DATED:   August 8, 2022

**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**